UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Shannon Brown,  )
    Plaintiff  )
                  )
        v.  )  Case No. 09-1380
                  )
Burlington Northern Santa Fe Railway Co.,  )
    Defendant  )
                  )

**ORDER**

Now before the Court is the Defendant's motion to strike Plaintiff's Rule 26 initial disclosures [#65]. The motion is fully briefed. As stated herein, the motion is granted.

The Federal Rules of Civil Procedure require parties to disclose certain information about potential witnesses, at about the time of the Rule 16 scheduling conference. FRCP 26(a)(1)(A)(i), (C). In addition, expert witnesses are to be identified, FRCP 26(a)(2)(A), "at the times and in the sequence that the court orders." FRCP 26(a)(2)(D).

When a party identifies an expert witness, the party must comply with the disclosure requirements in Rule 26(a)(2). If the expert witness "is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the identification must be accompanied by "a written report - prepared and signed by the witness". FRCP 26(a)(2)(B). In pertinent part, Rule 26(a)(2)(B) provides: "The [written] report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them...." *Id.* The purpose of the report is to provide the opposing party with adequate notice of the substance of the expert's forthcoming testimony and to allow time to prepare for a response. *Meyers v National Railroad. Passenger Corp,* 619 F3d 729, 734-35

(7th Cir 2010), citing *Walsh v Chez,* 583 F3d 990, 993 (7th Cir 2009); *Jenkins v Bartlett,* 487 F3d 482, 487 (7th Cir 2007).

The Rules also provide for supplementation of expert disclosures to correct any errors or fill in any incompletions. FRCP 26(e)(1) and (2). The consequence of non-compliance with Rule 26(a)(2)(B) and (e)(1) and (2) is exclusion of the expert's testimony "unless the failure was substantially justified or is harmless." FRCP 37(c)(1). See also, *Myers*, 619 F3d at 734-35, citing *Gicla v United States,* 572 F3d 407, 410 (7th Cir 2009).

As a general rule, many courts (including this one) do not treat physicians as testifying experts, because they have not been retained for litigation. See, generally, Wright and Miller, Federal Practice and Procedure, § 2033 and 2034; see also, *Musser v Gentiva Health Services,* 356 F3d 751, 756 (7th Cir 2004)(citing commentary to Rule 26 as support for the distinction between retained experts and those who can provide expert testimony because of their involvement in the facts of the case, such as treating physicians).

District courts so ruling treat these physicians as fact witnesses, requiring their identification but not requiring a written report. The Seventh Circuit has not addressed that precise point. Without ruling on that specific issue, the Seventh Circuit has made clear, however, that if a treating physician renders expert testimony as to the specific issue of causation, a written report *is* required if the subject of causation "was not determined at the time of treatment." Myers, 619 F3d at 734-35.

In *Myers*, two treating physicians opined in a letter as to causation. No evidence was presented or found in the record suggesting that they had "previously considered or determined the cause" of plaintiff's injuries during the course of treatment. The Court of Appeals noted that the letters offered by the physicians were "remarkably sparse;" they were thus insufficient to constitute the requisite "reports" because they did not reveal what the

doctors might have been thinking during treatment. The Seventh Circuit affirmed the District Court's exclusion of the causation testimony. *Id.*

In this case, the Rule 16 conference was held on April 5, 2010. The parties had previously submitted an agreed Plan for the case schedule. As is pertinent here, that Plan called for[1] making initial Rule 26(a) disclosures by July 1, 2010 and for identifying testifying expert witnesses (and providing reports as necessary) by February 1, 2011. The Court ordered that all discovery was to close on Sept. 1, 2011, a date that was later continued to May 18, 2012 (Minutes of Feb. 23, 2012); June 29, 2012 (Minutes of May 10, 2012) and Nov. 30, 2012 (Minutes of June 30, 2012).

Plaintiff did not make his Rule 26(a) disclosures, so Defendant sought the required information by written discovery. On July 28, 2011, Plaintiff identified two testifying expert witnesses, Dr. David Fletcher and David Gibson[2], as well as two treating physicians, Dr. James Williams and Dr. Clyde Grady.

Defendant deposed Dr. Grady on May 25, 2011, and Dr. Williams at about the same time. A supplemental deposition of Dr. Williams was taken on April 28, 2011.

On April 8, 2013 (nearly a year after the depositions and over 4 months after the close of all discovery), Plaintiff served Rule 26 Initial Disclosures. (Exh A). In those disclosures, he identified three additional testifying expert witnesses: himself, Dr. Clyde Grady and Dr. James Williams. The disclosures state, inter alia, that Dr. Grady "is expected to offer the opinion that Plaintiff's injury was caused by the incident in question," and that Dr. Williams is "expected to offer the opinion that Plaintiff's injury was caused by the

---

[1] This Court does not track interim deadlines, so there is no explicit mention of initial disclosure or expert witness disclosure deadline in the Minutes of the Rule 16 conference. The parties submitted, as they were ordered, an agreed Discovery Plan shortly before the Rule 16 conference, agreeing to the dates discussed in this sentence.

[2] Orders resolving motions as to these two experts are filed separately on this date.

3

incident in question." *Id.* They also disclose that Plaintiff is expected to testify "regarding the incidents as described in the complaint, which caused or contributed to his injury." *Id.*

In the instant motion, Defendant moves to strike these Rule 26 designations of experts as untimely, as "patently unfair," and as a "back door approach" around the required formal designation of experts. Plaintiff responds that the opinions of these two doctors fall within the exception discussed in *Myers* for treating physicians – because their opinions were reached in the course of their treatment of Plaintiff, they are not testifying experts who are required to produce a report.

There are numerous fallacies in Plaintiff's response. First, it misses the point entirely. Defendant's motion is not based on the lack of a report. It is first about un-timeliness. At no time during discovery did Plaintiff provide the requisite information about these physicians' testimony. Rule 26(a) is crystal clear: *in a timely manner*, witnesses who will be presenting opinion testimony under FRE 702,703 or 705 must be identified and the subject matter on which the witness is expected to testify must be stated. Rule 37 requires that the undisclosed opinions be barred unless there is good cause. Plaintiff makes no effort to establish good cause for his failure to comply with these Rules in a timely manner.

Second, Plaintiff asserts that a *formal* disclosure was not necessary because BNSF was not prejudiced by the lack thereof. In support of this assertion, Plaintiff cites to *Banister v Burton*, 636 F3d 828 (7th Cir 2011). In that case, plaintiff had been criminally charged, tried and acquitted. At that trial, a trauma surgeon had offered testimony about plaintiff's physical capacity in light of injuries he had sustained. In his subsequently-filed civil case, the defendant disclosed the physician but did not provide a report. Plaintiff filed a *Daubert* motion. The Court denied the motion, finding a report was unnecessary because the doctor's testimony was based on the type of knowledge standard to all doctors. It was not a case, said the Court, raising the "trained as a physician" argument to justify the admission of a doctor's

4

opinions on matters that are beyond his "requisite experience." *Id* at 832, citing *Deimer v Cincinnati Sub–Zero Products, Inc.,* 58 F3d 341, 345 (7th Cir 1995) (physician is not qualified to testify on matters beyond his "requisite experience"); *Porter v Whitehall Laboratories, Inc.,* 9 F3d 607, 615 (7th Cir 1993) (medical opinions cannot be admitted when a physician intends to give opinions unsupported by any method); and *Cunningham v Masterwear Corp.,* 569 F3d 673, 674–75 (7th Cir 2009) (physician may not present opinions simply because he is an "experienced physician).

    *Banister* itself is not particularly helpful, but it did cite to a helpful case. In *Westefer v Snyder*, 422 F3d 570, 585 n.21 (7th Cir 2005) the court held that exclusion of expert testimony is only required if the failure to disclose is harmful. In *Westefer*, the court articulated 4 factors that should guide the Court in evaluating the harm caused by a failure to disclose: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Id.*

    In this case, there is no question that BNSF has been prejudiced. Discovery is closed, and the deadline for filing *Daubert* motions challenging expert opinions has passed.[3] Only by totally disrupting a schedule that has already been extended four or more times can this prejudice be allayed, and without such an extension, nothing Plaintiff can do will alleviate the prejudice. The trial is calendared for May 13, less than a month from now. While bad faith may not have motived the Plaintiff, it is evident that Plaintiff knows how to make a proper disclosure, so his failure to notify BNSF that these doctors were going to testify on causation *before* they were deposed was at the least willful.

    Plaintiff also asserts that the doctors "necessarily came to their opinions on causation as a result of their care and treatment of the Plaintiff, not as retained experts. This assertion is

---

[3] Of note, BNSF did timely file Daubert motions as to the two formally-disclosed experts.

supported not by any citation to the doctors' depositions or records; it simply consists of counsel's own opinion that they had to determine whether work caused Plaintiff's problems in order to determine an appropriate treatment regimen. That is not evidence.

Moreover, a review of the doctors' depositions does not support this argument. In fact, Dr. Grady's deposition transcript (Exh 35 to Doc. #50, Defendant's Motion for summary judgment) completely belies the assertion. Throughout his deposition, Dr. Grady declined to offer any opinion whatsoever on causation. See Exh. 35 at page 17 (declining to state an opinion as to what caused Brown's carpal tunnel in his wrists); pages 18-19 (declining to state an opinion as to what caused the pain in Brown's elbow); page 28 (stating that based on the arthrogram and x-ray he could not tell the cause of his shoulder pain).

In his first deposition, (Exh. 50-6), Dr. Williams opined that, due to the types of job duties Plaintiff had described to him, his carpal tunnel syndrome "was as a direct result or at least an aggravating factor, was his work, because he had no other medical instigating cause." *Id* at p.12 [sic]; p. 32-33. In order to "verify" that Dr. Williams was not testifying as an expert on causation, Defendant took a supplemental deposition, wherein Dr. Williams explicitly denied that he was a "retained" expert, stating that he had "just treated Shannon as a patient." *Id* at p.23. Throughout both depositions, Dr. Williams maintained his opinion about causation. At no time, however, did Dr. Williams say that it was important for his treatment of Plaintiff to know the cause of his carpal tunnel syndrome. In fact, he admitted that his purpose in seeing Plaintiff (or any patient) is to take care of the patient, not to determine the cause of his problems. *Id* at p.16.

## CONCLUSION

No good cause has been demonstrated for Plaintiff's failure to disclose that Dr. Williams and Dr. Grady would be testifying about causation, and no showing has been made that the doctors' opinions on causation were necessarily derived during or necessary for their

treatment of the Plaintiff. The Rule 26 disclosures were therefore untimely. There is no question that BNSF has been prejudiced. Accordingly, Defendant's motion to strike the Rule 26 Disclosure is GRANTED. ENTERED: April 22, 2013

                              s/ John A. Gorman

                              JOHN A. GORMAN
                        UNITED STATES MAGISTRATE JUDGE